Michael D. Adams (State Bar No. 185835)
madams@rutan.com
Meredith L. Williams (State Bar No. 292888)
mwilliams@rutan.com
Seth M. Jessee (State Bar No. 310983)
sjessee@rutan.com
RUTAN & TUCKER, LLP
611 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-1931
Telephone: 714-641-5100
Facsimile: 714-546-9035

Attorneys for Plaintiff
QC LABS, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

QC LABS, a California corporation dba CANNALYSIS,

Plaintiff,

vs.

GREEN LEAF LAB, LLC, an Oregon limited liability company.

Defendant.

Case No.

**COMPLAINT FOR:**

1. **DECLARATORY RELIEF [28 U.S.C. § 2201 *et seq.*]**
2. **COMMON LAW TRADEMARK INFRINGEMENT**
3. **COMMON LAW UNFAIR COMPETITION**
4. **UNFAIR BUSINESS PRACTICES [CAL. BUS. & PROF. CODE § 17200, *et seq.*]**
5. **CANCELLATION OF CALIFORNIA TRADEMARK REGISTRATION (FRAUD) [CAL. BUS. & PROF. CODE § 14200, *et seq.*]**
6. **CANCELLATION OF CALIFORNIA TRADEMARK REGISTRATION (STATUTORY CRITERIA) [CAL. BUS. & PROF. CODE § 14200, *et seq.*]**

**JURY TRIAL DEMANDED**

Plaintiff QC Labs dba Cannalysis ("Plaintiff" or "QC Labs") alleges as follows for its Complaint against defendant Green Leaf Lab, LLC ("Defendant" or "Green Leaf"):

## NATURE OF THE ACTION

1. This action involves an attempt by Green Leaf to invade the California market in conscious disregard of the common law trademark rights of QC Labs and its well-established scientific cannabis testing laboratory under the mark CANNALYSIS.

2. QC Labs' licensed and accredited CANNALYSIS laboratory opened in March 2016 in California and QC Labs has established common law rights to the CANNALYSIS mark based on the mark's substantial goodwill and customer recognition throughout California as a source identifier for QC Labs.

3. Green Leaf operates a cannabis testing laboratory in a geographically distinct market in Portland, Oregon under the trade name, Green Leaf Lab. Green Leaf advertises and promotes its cannabis testing as CANNALYSIS services.

4. Until recently, Green Leaf demonstrated no intention to enter the California market. Indeed, Green Leaf has not even obtained the required state license to provide cannabis testing services in California.

5. Nevertheless, on January 17, 2018, Green Leaf obtained a California trademark registration for the CANNALYSIS mark in connection with scientific testing of medical and recreational cannabis. Green Leaf's California trademark application states that it first used the CANNALYSIS mark on January 12, 2018—almost two years after QC Labs' began using the mark in California.

6. On information and belief, Green Leaf obtained the California trademark registration by falsely stating that it was currently using the CANNALYSIS mark in California for such services when it had not even obtained the required license to lawfully conduct such services.

7. Green Leaf has threatened litigation against QC Labs to enforce its

purported rights in its fraudulently obtained California trademark registration for the CANNALYSIS mark.

## JURISDICTION AND VENUE

8. The Court has subject matter jurisdiction over this action because (i) Plaintiff and Defendant are citizens of different states and the value of the matter in controversy exceeds the sum of $75,000.00 exclusive of interests and costs, such that jurisdiction is expressly conferred in accordance with 28 U.S.C. § 1332(a); (ii) the Court has jurisdiction for declaratory judgment actions under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201-02; and (iii) the court has supplemental jurisdiction over all related claims herein in accordance with 28 U.S.C. § 1338(b).

9. The Court has personal jurisdiction over Defendant at least because Defendant conducts business in the State of California and, on information and belief, within this judicial district, including the promotion and sale of services using Plaintiff's CANNALYSIS mark. The Court also has personal jurisdiction over Defendant because the acts giving rise to the conduct complained of herein occurred in California, and adversely affect QC Labs, a resident of California in this judicial district. Further, Green Leaf sent correspondence to QC Labs in California threatening to file suit for the purported violation of rights for actions performed in California.

10. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because QC Labs has suffered harm in this district and a substantial part of the events giving rise to QC Labs' claims arose and are continuing to occur in this district.

11. An actual case or controversy exists between the parties. Defendant has threatened a trademark infringement action and demanded that QC Labs cease use of the CANNALYSIS mark, thereby giving QC Labs a reasonable apprehension of a threat of litigation. Defendant's statements threaten injury to QC Labs.

## THE PARTIES

12. QC Labs is corporation organized and existing under the laws of California with a principal place of business located at 17322 Murphy Avenue, Irvine, California 92614. QC Labs provides scientific laboratory services under the CANNALYSIS mark.

13. Upon information and belief, Green Leaf is an Oregon limited liability company with a principal place of business located at 12025 NE Marx Street, Portland, OR 97220. Green Leaf operates a scientific cannabis testing laboratory in Portland, Oregon under the trade name, Green Leaf Lab.

## FACTUAL ALLEGATIONS

### QC Lab's Use Of The CANNALYSIS Mark In California

14. QC Labs incorporated in California on October 27, 2015 for the purpose of establishing a scientific cannabis testing laboratory for the California market. In March 2016, QC Labs opened its tech-forward analytical testing laboratory that uses validated scientific methods to analyze cannabis products. QC Labs has used the CANNALYSIS mark continuously since and is actively exploring further expansion of its business under the CANNALYSIS mark.

15. QC Labs selected the CANNALYSIS mark without knowledge of Green Leaf's use of the CANNALYSIS mark.

16. QC Labs tech-forward approach has reinvented the way cannabis cultivators and brands interact with their laboratory partners. QC Labs built a custom platform that streamlines product sample intake and testing, provides real-time tracking with on-line customer reporting, and integrates with a popular online dispensary locator and menu website. QC Labs' laboratory also offers customized packaging labels for customers complete with a QR code.

17. A copy of a certificate of analysis issued by QC Labs for the testing of a cannabis product is attached as **Exhibit A**. A copy of a custom label for a cannabis product tested by the CANNALYSIS laboratory is attached as **Exhibit B**.

18. This tech-forward approach led QC Labs to quickly establish its CANNALYSIS laboratory as one of the leading cannabis testing laboratories in California.

19. In November 2016, California voters passed Proposition 64 (also known as the Adult Use of Marijuana Act) legalizing recreational marijuana in California. In response, the California Senate adopted a statutory framework for the licensing of commercial cannabis. The new laws require cannabis businesses to obtain state licenses starting January 1, 2018 when the recreational cannabis market opened.

20. Recognizing the future growth of the California cannabis market, on November 8, 2017, QC Labs obtained $1 million in investment funding led by a venture capital firm co-founded by rapper-turned-entrepreneur Snoop Dogg to quickly scale its CANNALYSIS laboratory.

21. On November 16, 2017, California's Department of Consumer Affair's Bureau of Cannabis Control adopted emergency regulations to govern California's cannabis industry under California Code of Regulations, Title 16, Division 42 (the "Emergency Regulations"). Under the Emergency Regulations, a licensee may only sell cannabis products that have been tested to measure the following broad categories: potency, pesticides, microbial contamination, residual solvents, terpenes, heavy metals, and mycotoxins.

22. The Emergency Regulations require all cannabis testing laboratories to be licensed by the Bureau of Cannabis Control.

23. The Emergency Regulations also required cannabis testing laboratories to be accredited by an international regulatory organization called the International Organization for Standardization ("ISO"). QC Labs' CANNALYSIS laboratory obtained ISO accreditation from Perry Johnson Laboratory Accreditation, Inc.

24. On January 1, 2018, California began issuing temporary licenses for cannabis operators. As of March 2018, California had 599 licensed manufacturers, 892 cultivators, and over 800 dispensaries to serve California's 38 million people.

25. As of August 9, 2018, the California Bureau of Cannabis Control had issued only 33 temporary licenses for cannabis testing laboratories. The limited number of laboratories is a result of the high cost of analytical instruments, the dearth of skilled professionals to operate a laboratory, and the lack of California cities or counties that permit cannabis laboratories to exist. Nevertheless, QC Labs operates its laboratory with a license (No. C8-18-0000031-TEMP) under the CANNALYSIS mark.

26. The government mandated third-party cannabis testing combined with the lack of licensed laboratories created a huge demand for cannabis testing services that has delayed cannabis product approvals.

27. QC Labs has been poised to fill the increased demand. As a result, QC Labs' laboratory, providing services under the CANNALYSIS mark, has gained notoriety as a critical part of California's legal cannabis industry.

28. QC Labs' laboratory has also received substantial unsolicited attention and positive recognition by the media, which has further contributed to California consumers' widespread recognition of QC Labs' laboratory providing services under the CANNALYSIS mark.

29. Additionally, QC Labs has expended considerable time, effort, and money promoting and advertising its laboratory, further contributing to the recognition and success of its laboratory providing services under the CANNALYSIS mark.

30. QC Labs has used the CANNALYSIS mark extensively on the internet. QC Labs has owned and operated the domain name Cannalysislabs.com since December 2015 and has continuously advertised and promoted its cannabis testing services via that website since then.

31. As a result of QC Labs' widespread promotion and use of the CANNALYSIS mark and California's extensive demand for cannabis testing, the CANNALYSIS mark embodies substantial goodwill and customer recognition throughout California as a source identifier for QC Labs. The California public distinguishes QC Labs' services from those of others who offer the same or similar services on the basis of the CANNALYSIS mark. QC Lab's CANNALYSIS mark has acquired secondary meaning throughout California.

32. In addition to their common law rights in the CANNALYSIS mark, QC Labs is the owner of California Trademark Application for Registration No. 3119672 in connection with hats, shirts, and sweatshirts, submitted to the California Secretary of State on October 17, 2017.

**Green Leaf's Use Of The CANNALYSIS Mark**

33. Green Leaf operates a scientific cannabis testing laboratory called Green Leaf Lab in Portland, Oregon. Green Leaf advertises and promotes its cannabis testing as CANNALYSIS services.

34. Green Leaf filed state trademark registrations in Oregon and Washington for the CANNALYSIS mark on October 11, 2011 and November 2, 2017, respectfully.

35. According to Green Leaf's application for trademark registration in Oregon, Green Leaf first used the CANNALYSIS mark in Oregon on June 1, 2011. According to Green Leaf's application for trademark registration in Washington, Green Leaf's date of first use in Washington was September 1, 2011.

36. On January 17, 2018, Green Leaf obtained California Trademark Registration No. 300242 for the CANNALYSIS mark in International Class 42 for "[c]onsulting and scientific testing of medical and recreational marijuana to provide analytical data for the purposes of compliance with state laws and consumer awareness." Green Leaf's California trademark registration claims a date of first use in commerce in California of January 12, 2018, almost two years after QC Labs

began using the CANNALYSIS mark in California.

37. On information and belief, at the time Green Leaf filed its application, Green Leaf was not licensed in California to perform laboratory testing of cannabis products and thus could not lawfully use the mark in California for the identified services.

38. On information and belief, Green Leaf currently does not have a license to perform laboratory testing of cannabis products. Nevertheless, Green Leaf's website advertises that it offers "analytical testing consulting for California."

39. QC Labs' use of the CANNALYSIS mark in California, several years before Green Leaf's alleged use of the CANNALYSIS mark in California, gives QC Labs priority over Green Leaf with respect to use of the CANNALYSIS mark in California.

40. Green Leaf's subsequent use of the CANNALYSIS mark for its cannabis testing services in California constitutes use of a mark that is identical to QC Labs' mark for services that are the same as, or similar to, QC Labs' services and are provided to similar customers.

41. On information and belief, as a result of Green Leaf's use of the CANNALYSIS mark, the California public has been confused, and is likely to be confused, as to whether Green Leaf's services are provided by QC Labs, whether the two businesses are associated or affiliated, whether Green Leaf's business is sponsored or approved by QC Labs, or vice versa.

**Green Leaf's Conduct Creating A Justiciable Controversy**

42. On June 27, 2018, Green Leaf sent QC Labs a letter titled "Notice of Trademark Infringement: Use of 'Cannalysis" contending that QC Labs is infringing Green Leaf's state registered CANNALYSIS trademarks, including in California. The June 27, 2018 letter is attached as **Exhibit C**.

43. In the June 27, 2018 letter, Green Leaf states that it began use of the CANNALYSIS mark in California on January 17, 2018, almost two years after QC

Labs' use of the CANNALYSIS mark in California.

44. Green Leaf contends in the letter that "QC Labs' use of 'Cannalysis' essentially amounts to an unauthorized use of Green Leaf Lab's Oregon registered trademark 'Cannalysis' by advertising and marketing to customers in at least California, Oregon, and Washington, the states in which Green Leaf Labs currently has common law and state trademark registration rights, and is thus an infringement of the 'Cannalysis' trademark." Green Leaf adds that QC Labs' use of the CANNALYSIS mark amounts to unfair competition under 15 U.S.C. § 1125(a).

45. In the letter, Green Leaf demands that QC Labs "immediately cease and desist in any further use of 'Cannalysis,'" including within the California cannabis market.

46. The June 27, 2018 letter also states that Plaintiff "must" execute a copy of an agreement to immediately cease and desist from any use of the CANNALYSIS mark in all marketing and promotional activities.

47. QC Labs denies Green Leaf's assertions of trademark infringement, maintains that QC Labs' common law rights to the CANNALYSIS mark within California have priority to any rights of Green Leaf, and maintains that Green Leaf's California Trademark Registration No. 300242 should be cancelled.

## COUNT I

### Declaratory Judgment of No Trademark Infringement or Unfair Competition

48. Plaintiff repeats and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 47 above, inclusive, as though fully set forth herein.

49. Green Leaf contends that QC Labs' use of the CANNALYSIS mark in connection with cannabis testing in California is likely to cause consumer confusion, and constitutes trademark infringement and related claims for relief.

50. Green Leaf's conduct alleged above gives rise to a reasonable

apprehension of fear on the part of QC Labs that it will face suit for trademark infringement and unfair competition if QC Labs continues to use the CANNALYSIS mark in connection with cannabis testing services in California. QC Labs denies having any such liability.

51. QC Labs contends that Green Leaf is not entitled to injunctive relief and/or any monetary remedy based on QC Labs' use of the CANNALYSIS mark in connection with cannabis testing in California. On information and belief, Green Leaf denies these contentions.

52. A justiciable controversy exists between QC Labs and Green Leaf concerning QC Labs use of the CANNALYSIS mark in connection with cannabis testing services in California.

**COUNT II**

**Common Law Trademark Infringement**

53. Plaintiff repeats and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 52 above, inclusive, as though fully set forth herein.

54. QC Labs has acquired trademark rights to the CANNALYSIS mark in connection with cannabis testing services through its continuous use of the mark in California.

55. QC Labs' use of the CANNALYSIS mark in California predates Green Leaf's use of the CANNALYSIS mark in California.

56. The aforesaid acts of Green Leaf are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Green Leaf with QC Labs, or as to the origin, sponsorship or approval of Green Leaf's goods, services or other commercial activities by QC Labs.

57. The aforesaid acts of Green Leaf constitute trademark infringement in violation of common law.

58. As a direct and proximate result of Green Leaf's wrongful acts, QC Labs

has suffered and continues to suffer substantial pecuniary losses and irreparable injury to its business reputation and goodwill. As such, QC Labs remedy at law is not adequate to compensate for injuries inflicted by Green Leaf. Accordingly, QC Labs is entitled to temporary, preliminary and permanent injunctive relief.

## COUNT III

### Common Law Unfair Competition

59. Plaintiff repeats and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 58 above, inclusive, as though fully set forth herein.

60. QC Labs has used the CANNALYSIS mark continuously in connection with cannabis testing services for more than 2.5 years in California.

61. Over the last 2.5 years, QC Labs' CANNALYSIS mark has developed secondary meaning and significance that identifies QC Labs with the services that it provides.

62. The aforesaid acts of Green Leaf are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Green Leaf with QC Labs, or as to the origin, sponsorship or approval of Green Leaf's goods and services or other commercial activities by QC Labs.

63. The aforesaid acts of Green Leaf constitute unfair competition in violation of the common law of the State of California by attempting to pass off Green Leaf's laboratory cannabis testing services as associated or connected with, or endorsed or sponsored by, QC Labs.

64. As a direct and proximate result of Green Leaf's wrongful acts, QC Labs has suffered and continues to suffer substantial pecuniary losses and irreparable injury to its business reputation and goodwill. As such, QC Labs remedy at law is not adequate to compensate for injuries inflicted by Green Leaf. Accordingly, QC Labs is entitled to temporary, preliminary and permanent injunctive relief.

## COUNT IV

**California Unfair Competition Law**
**(Cal. Bus. & Prof. Code § 17200 et seq.)**

65. Plaintiff repeats and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 64 above, inclusive, as though fully set forth herein.

66. California Business and Professions Code § 17200 *et seq.* prohibits unfair competition in the form of any unlawful, unfair, or fraudulent business acts or practices.

67. Green Leaf, through the conduct alleged herein, has engaged in and continues to engage in unlawful, unfair, and/or fraudulent conduct in violation of Section 17200 *et seq.* of the California Business & Professions Code by, among other things, intentionally causing a likelihood of confusion among California consumers and misleading California consumers into believing that the cannabis testing they receive from Green Leaf is endorsed, sponsored, approved by, or affiliated, connected, or otherwise associated with, QC Labs.

68. This conduct is "unlawful" because it violates the common law of the State of California, as described above.

69. This conduct is "unfair" and "fraudulent" in that it is likely to deceive customers into believing that QC Labs endorsed, sponsored, approved, or affiliated, connected, or otherwise associated with Green Leaf or its services in California.

70. As a direct and proximate result of Green Leaf's wrongful acts, QC Labs has suffered and continues to suffer substantial pecuniary losses and irreparable injury to its business reputation and goodwill. As such, QC Labs remedy at law is not adequate to compensate for injuries inflicted by Green Leaf. Accordingly, QC Labs is entitled to temporary, preliminary and permanent injunctive relief.

**COUNT V**

**Cancellation of California Trademark Registration Based On Fraud (Cal. Bus. & Prof. Code § 14200, *et seq.*)**

71. Plaintiff repeats and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 70 above, inclusive, as though fully set forth herein.

72. California Business and Professions Code §§ 26000 *et seq*. and the Emergency Regulations adopted by the Bureau of Cannabis Control require that all cannabis testing laboratories be licensed by the California Bureau of Cannabis Control.

73. On January 17, 2018, Green Leaf obtained California Trademark Registration No. 300242 for the mark CANNALYSIS in connection with consulting and scientific testing of medical and recreational marijuana to provide analytical data for the purposes of compliance with state laws and consumer awareness.

74. On information and belief, Green Leaf fraudulently obtained California Trademark Registration No. 300242 because Green Leaf's application failed to disclose to the California Secretary of State that at the time Green Leaf submitted its California trademark application, Green Leaf was not lawfully using the CANNALYSIS mark in commerce in California because it had not obtained the required license for such use from California.

75. Green Leaf's statement that it had used the CANNALYSIS mark in commerce in California was a false misrepresentation of material fact, and constitutes fraud on the California Secretary of State.

76. On information and belief, Green Leaf made the foregoing misrepresentations with the intent to deceive the California Secretary of State so that the California Secretary of State would rely on the misrepresentations and register the CANNALYSIS mark to Green Leaf. But for Green Leaf's misrepresentations the California Secretary of State would not have issued Green Leaf the registration

because it was not lawfully using the mark in commerce in California.

77. On information and belief, the California Secretary of State reasonably relied on Green Leaf's statements in issuing California Trademark Registration No. 300242.

78. QC Labs has been damaged by the California Secretary of State's reliance in registering California Trademark Registration No. 300242 to Green Leaf.

79. As a result Green Leaf's California Trademark Registration No. 300242 is invalid and void *ab initio*. QC Labs requests that the Court enter an order cancelling California Trademark Registration No. 300242 and certifying that order to the California Secretary of State.

**COUNT VI**

**Cancellation of California Trademark Registration Based On Priority (Cal. Bus. & Prof. Code § 14200, *et seq*.)**

80. Plaintiff repeats and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 79 above, inclusive, as though fully set forth herein.

81. California Business and Professions Code § 14205(f) states that a trademark shall not be registered if it consists of or comprises a "trade name previously used by another and not abandoned, as to be likely, when used on or in connection with the goods or services of the applicant, to cause confusion or mistake, or to deceive."

82. QC Labs' has used the CANNALYSIS mark in California in connection with scientific cannabis testing since at least as early as March 2016.

83. Green Leaf claims a date of first use in California of January 2018.

84. The mark in California Trademark Registration No. 300242 is identical to QC Labs' CANNALYSIS mark.

85. The services listed in California Trademark Registration No. 300242 are identical, or substantial similar, to the services QC Labs has been offering under the

CANNALYSIS mark since at least as early as March 2016.

86. The mark in Green Leaf's California registration is likely to cause confusion, mistake, or deceive when used in connection with the services listed in the California registration.

87. As a result of QC Labs prior use, QC Labs requests that the Court enter an order cancelling California Trademark Registration No. 300242 and certifying that order to the California Secretary of State.

**PRAYER FOR RELIEF**

WHEREFORE, QC Labs requests that the Court:

a. Enter a declaratory judgment confirming the validity, priority, and enforceability of QC Labs' common law use of the CANNALYSIS mark in connection with scientific cannabis testing in California;

b. Enter a declaratory judgment that QC Labs' use of the CANNALYSIS mark in connection with cannabis testing services does not constitute trademark infringement or other rights of Green Leaf in California;

c. Enter an order that Green Leaf, and each of its officers, directors, agents, servants, employees and representatives, and those persons in active concert or participation with them or any of them, be permanently enjoined and restrained from:

i. Using the CANNALYSIS mark, or any other name or mark confusing similar to the CANNALYSIS mark, either alone or in combination with other words or symbols, in the marketing, sales, promotion, advertising, identification, or in any other manner in connection with cannabis testing services in California;

ii. Using the CANNALYSIS mark, or any other name or mark confusing similar to the CANNALYSIS mark, in any form or manner that would tend to identify or associate Green Leaf's business or services with QC Labs in the marketing, sales, promotion, advertising, identification, or in any other manner in

connection with cannabis testing services in California;

d. Enter an order that Green Leaf be required to file with this Court and to serve upon QC Labs within thirty (30) days after service upon Green Leaf of this Court's injunction issued in this action, a written report by Green Leaf under oath setting forth in detail the manner in which Green Leaf has complied with this injunction;

e. Enter an order, certified to the California Secretary of State, cancelling California Trademark Registration No. 300242 for the CANNALYSIS mark;

f. Award QC Labs damages according to proof at trial, but in any event in excess of $75,000;

g. Award pre-judgement interest on all amounts claimed as permitted by law; and

h. Award QC Labs any and all such other and further relief as the Court deems just and proper.

Dated: August 16, 2018

RUTAN & TUCKER, LLP
MICHAEL D. ADAMS
MEREDITH L. WILLIAMS
SETH M. JESSEE

By: */s/ Michael Adams*
Michael D. Adams
Attorneys for Plaintiff
QC Labs

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Dated: August 16, 2018

RUTAN & TUCKER, LLP
MICHAEL D. ADAMS
MEREDITH L. WILLIAMS
SETH M. JESSEE

By: *Michael Adams*
Michael D. Adams
Attorneys for Plaintiff
QC Labs